| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA | |
| ERIC ANTONIO AUDELO,<br>　　　　　　　　　　Plaintiff,<br>v.<br>DR. JEFFREY BEARD and KAMALA D. HARRIS,<br>　　　　　　　　　　Defendants. | Case No.: 3:14-cv-00567-H-PCL<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE:**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

## **I. INTRODUCTION**

Before the Court now is Petitioner ERIC ANTIONIO AUDELO, proceeding pro se and in forma pauperis, petitioning for writ of habeas corpus. (Doc. 1.) The petition was originally filed on March 12, 2014; however, the case was dismissed without prejudice because the filing fee was not paid. (*See* Docs. 2, 3.) On July 10, 2018, the appropriate information regarding Petitioner's prisoner trust fund statement was filed. (Doc. 7.) The case was thereafter reopened. Petitioner moved for reconsideration of his motion to proceed in forma pauperis, which the Court granted accordingly. (Docs. 9, 10.) Now properly before the Court, the petition claims habeas relief is warranted based on Petitioner's trial and appellate counsels rendering ineffective assistance at their respective stages of the matter, violating Petitioner's Sixth Amendment right to counsel. (*Id*.)

The Honorable William Q. Hayes referred the matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. section 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the petition, answer, state court record, and state court decisions, the Court recommends **DENYING** relief.

## II. BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Summer v. Mata*, 449 U.S. 539, 550 (1981) (holding in part that findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). As Petitioner has not objected to any of the facts presented in the California Court of Appeal's opinion, the Court accepts the Court of Appeal's recitation, laid out in full as follows:

> On November 18, 2009, [Petitioner], his mother and grandmother were moving out of their rented home because their lease expired. The owner of the home, Jose Rocha, [FN. We refer to Jose Rocha and his son, Manuel Rocha, by their first names individually, and as "the Rochas" collectively.] and his son-in-law, Hector Ramirez, visited the home to see how long it would be until they were finished moving. Jose also asked [Petitioner] when he would be able to move an inoperable car parked on the property. The car belonged to [Petitioner]'s older brother who died in 1991 as a teenager in a shooting in which [Petitioner] was also shot. Jose explained he received notices from the city to move the car or he would incur fines. Jose told [Petitioner] that he (Jose) would move the car and [Petitioner] became angry.
>
> Ramirez approached [Petitioner] to calm the confrontation and [Petitioner] threatened to fight him. Jose called Manuel to come to the home; Jose and Ramirez then sat in a car parked in the street. [Petitioner] got his semi-automatic handgun and placed it in its box in the front seat of his car. [Petitioner], his grandmother and his mother continued moving items out of the house when Manuel arrived.
>
> After Manuel arrived, the Rochas and Ramirez approached [Petitioner], who was standing by his car. As they approached, [Petitioner] grabbed the handgun from the box in the front seat of his car and hid it behind his back. [Petitioner] told the Rochas he would move the car but

added it did not matter because Jose was going to lose the house, presumably to foreclosure. Manuel told [Petitioner] the home was none of his business and told him to take his things and "go out."

    [Petitioner] pulled the gun out from behind his back and pointed it at Manuel stating, "Come on. What are you going to do about it? Let's go." When Jose assured [Petitioner] they were not trying to insult him, [Petitioner] pointed the gun toward Jose and said, "You too, asshole!" Although the gun was loaded when he pointed it at the Rochas, [Petitioner] did not load a bullet into the chamber or put his finger on the trigger. [Petitioner]'s mother tried to calm him. Manuel retreated to the car and called the police, and [Petitioner], Jose and Ramirez continued to argue.

    [Petitioner] was arrested without incident and taken into custody. While in custody, he admitted he was under the influence of methamphetamine and later explained he struggled with addiction since his honorable discharge from the Army in 2008. He was charged with two counts of assault with a deadly weapon for pointing the semi-automatic handgun at each of the Rochas, with enhancements for personal use of a firearm for each assault charge, and one count of being under the influence of a controlled substance. A jury convicted him of all counts and found true that he personally used a firearm in the commission of the two assault counts. At sentencing, the court imposed the upper terms for one assault and for the attached enhancement, simply stating [Petitioner]'s criminal history supported the upper terms. When 14 years old, [Petitioner] was convicted of possessing a switchblade, resisting arrest, and twice taking a vehicle without the owner's consent. At 17, he was convicted of attempted premeditated murder, malicious discharge of a firearm at an occupied vehicle, and being personally and principally armed with a firearm. At 23, he was convicted of driving under the influence and causing an injury. At 25 he was again convicted of driving under the influence, and convicted twice of being under the influence of a controlled substance. Finally, at the age of 34, he was convicted of possessing drug paraphernalia one month before he committed the assault on the Rochas while under the influence of methamphetamine.

    The court sentenced [Petitioner] to prison for the upper term of nine years [FN. The trial court has the discretion to sentence a defendant convicted of assault with a semi-automatic firearm to state prison for three, six, or nine years.] for one assault count, the upper term of 10 years [FN. The trial court has the discretion to impose a consecutive sentence for the personal use of a firearm enhancement for three, four, or 10 years in state prison.] for the attached personal use of a firearm enhancement, two years for the second assault count, and one year for being under the influence of methamphetamine, which the court deemed satisfied by credit for time

served. [FN [Petitioner] challenges only the court's imposition of the upper term for the first count of assault with a deadly weapon and the upper term for personal use of a firearm enhancement on count one.] In total, the court sentenced [Petitioner] to 22 years four months in prison. The court previously granted [Petitioner]'s motion to dismiss his prior strike conviction allegation for the attempted premeditated murder conviction, and [Petitioner] is eligible for formal probation. It suspended execution of the sentence and ordered 10 years of formal probation, cautioning [petitioner] not to violate probation because the prison sentence was severe.

[Petitioner] violated probation two months after sentencing when he admitted he used methamphetamine. At the probation revocation hearing, his probation officer reported [Petitioner] also had post-traumatic stress disorder as a result of his military service, refused to utilize available mental health services, and was a danger to himself and others. The court revoked probation and imposed the suspended 22-year, four-month sentence.

(Lodgment 6 at 2-5.)

Petitioner's probation was revoked on October 11, 2011. (Lodgment 2 at 371.) Following the revocation, Petitioner began pursuing a direct appeal. Subsequent to his opening brief and the respondent's brief, Petitioner filed his reply brief on September 12, 2012.[1] (Lodgments 3, 4, 5.) Petitioner's direct appeal was based solely upon the trial court's alleged error in using the same aggravating factor to sentence Petitioner to the upper limits on one count of assault and the related enhancement. (*See* Lodgment 3.) The Court of Appeal rejected this argument, finding the issue had not been preserved as trial counsel had not objected to the dual use of the aggravating factor at sentencing. (Lodgment 6.) The Court of Appeal also determined whether the claim had any merit despite the procedural default. The Court of Appeal found the trial court was within its "discretion to use [Petitioner's] criminal history to impose the upper terms on one assault count and on the enhancement." (*Id*. at 6-7.)

---

[1] Only Petitioner's reply brief is file stamped. Plaintiff's opening brief is neither file stamped nor signed by counsel, so the Court cannot determine when it was filed. (Lodgment 3.) Respondent's reply brief is similarly not file stamped; however, it is signed and dated August 9, 2012. (Lodgment 4 at 10.)

4

3:14-cv-00567-H-PCL

Following this denial at the Court of Appeal, Petitioner did not pursue his direct appeal any further. Instead, Petitioner began pursuing habeas relief. Petitioner filed his first petition for writ of habeas corpus on June 3, 2013 in the Superior Court of California. (Lodgment 7.) This petition was based on the alleged error in sentencing as well as ineffective assistance of Petitioner's attorneys at trial and on direct appeal. (*Id.*) The Superior Court rejected the petition, finding there had been no sentencing error and that Petitioner had introduced "no facts to indicate that [his] trial attorney made any unprofessional errors or that any decisions were not the result of an informed choice among tactical alternatives." (Lodgment 8 at 3.)

Petitioner then filed a petition in the Court of Appeal. (Lodgment 9.) In this petition, Petitioner abandoned the sentencing claim, and instead brought only ineffective assistance of counsel arguments with regard to both his trial and appellate counsel. (*See generally id.*) The Court of Appeal denied the petition for the same reason the Superior Court did: Petitioner failed to provide facts to substantiate his claims. (*See* Lodgment 10.) For example, in bringing the ineffective assistance of counsel claim regarding an alleged failure to investigate, the Court of Appeal noted Petitioner "has not provided us with evidence that trial counsel in fact never engaged in such investigations . . . ." (*Id.* at 1.)

To fully exhaust his state remedies, Petitioner filed his final state petition in the Supreme Court of California on December 9, 2013.[2] (Lodgment 11.) Therein, Petitioner framed his arguments as a response to the Court of Appeal's decision. (*See id.* at 6.) Petitioner first argued his trial counsel's failure to present his PTSD was due to a failure

---

[2] The Court notes that in his current petition filed with this Court, Petitioner includes an attachment which is a handwritten petition for habeas corpus, different from that filed with the Court here. (Doc. 1 at 23-25.) Petitioner claims he attempted to file this with the Supreme Court of California, but it is unclear why it was never filed. This new petition is only cosmetically different from both the current petition and that which was actually filed with the Supreme Court. (*Id.* at 19.) Within this petition, Petitioner fully lays out the same claims. (*See generally id.* at 23-35.) The Court will read Petitioner's arguments contained therein and address any additional arguments presented concurrently with the present petition before the Court.

5

3:14-cv-00567-H-PCL

to investigate, which was so fundamentally ineffective that no further facts were necessary. (*Id.* at 7.) Secondly, Petitioner argued his appellate counsel was ineffective for two reasons: raising a forfeited claim and failing to raise ineffective assistance based on trial counsel's failure to preserve the now forfeited claim. (*Id.*) According to Petitioner, this was clearly sufficient evidence of ineffective assistance. (*Id.*) The Supreme Court disagreed, and summarily denied the petition on February 19, 2014. (Lodgment 12.)

Petitioner now brings the same ineffective assistance of counsel claims before this Court in his Petition filed on March 12, 2014. (Doc. 1.) After a dismissal without prejudice, and a denial of a formal inquiry, the Court now turns to the merits of Petitioner's claims. (*See* Docs. 2, 13, 14.)

## III. STANDARD OF REVIEW

A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of state court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Federal habeas courts may not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000) ("a violation of state law standing alone is not cognizable in federal court on habeas").

This FAP is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. §2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal

court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinary deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877(9th Cir. 2004). Because Petitioner's arguments involve only questions of law, this Court reviews the petition under the "contrary to" and "unreasonable application" clauses of § 2254(d)(1).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Y1st v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Hines v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts

[Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of §2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

Where the state court did not reach the merits of a claim because of the imposition of a state procedural bar, "there is no state court decision. . . . to which to accord deference." *Pirtle*, 313 F.3d at 1167. Thus, this court must review those claims de novo. *Id.* However, AEDPA "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "Rather, [as the Supreme Court has] explained, '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) (quoting *Richter*, 562 U.S. at 99).

## **IV. DISCUSSION**

Petitioner is now before the Court arguing he received ineffective assistance of counsel from both his trial and appellate counsels. According to Petitioner, his trial counsel was ineffective for four reasons: (1) trial counsel failed to investigate Petitioner's PTSD, (2) trial counsel failed to present expert testimony regarding Petitioner's PTSD, (3) trial counsel failed to present imperfect self defense as a defense, and (4) trial counsel failed to research the effects of PTSD on Petitioner's case and the law of self defense and defense of others. (Doc. 1 at 9.)

Petitioner argues his appellate counsel was ineffective because appellate counsel raised a forfeited claim regarding Petitioner's sentencing. (Doc. 1 at 5-7.) Specifically, Petitioner alleges this was a shortcoming on his appellate counsel's part because appellate counsel "raise[d] a forfeited claim . . . , and the[n] cite[d] a case that tells one that the very claim raised required Trial Counsel to object during sentencing." (*Id.* at 5.) Trial

counsel had not raised any such objection, as required. Petitioner argues by this action, appellate counsel provided constitutionally ineffective assistance.

### A. Governing Law

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 120 S. Ct. 1495, 1512 (U.S. 2000) (stating it is beyond question that *Strickland* is the "clearly established" law governing ineffective assistance of counsel claims); *Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (same); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (same). There, the United States Supreme Court establish a two-part test for evaluating ineffective assistance of counsel claims. To establish that his trial counsel was ineffective under *Strickland*, a challenger must show: (1) his trial counsel's performance was deficient; and (2) trial counsel's deficient performance prejudiced his defense. Ortiz, 149 F.3d at 932 (citing *Strickland*, 466 U.S. at 688, 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. 668, 697 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

To establish deficient performance, Petitioner must show that "counsel made errors so serious . . . that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The relevant inquiry is not, however, what counsel could have done, but rather whether the decisions made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz,* 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th

Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review of highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

It is well settled that "[c]onclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 690 (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment"); *Ortiz*, 149 F.3d at 933 (rejecting ineffective assistance of counsel claim where petitioner failed "to indicate how he was prejudiced by counsel's failure . . ." to conduct cross-examination on a specific issue); *United States v. Berry*, 814 F.2d 1406 (9th Cir. 1987) (defendant was not denied effective assistance of counsel for failure to call out-of-state witnesses absent indication of what witnesses would have testified to or how their testimony would have changed the outcome of proceeding.); *Cranford v. Sumner*, 672 F.Supp. 453, 457 (D. Nev. 1987) ("Aside from the bald allegation that his attorney should have raised this claim but did not, the petitioner has failed to demonstrate how his attorney's performance fell below the reasonable level of professional competence required by Strickland").

It is well-established that a defendant has the ultimate authority to make fundamental decisions regarding whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal. *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977) (Burger, C.J. concurring). However:

> [no decision of the Supreme Court] suggests, . . . the indigent defendant has

> a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id*. The professional judgment and evaluation every defendant is entitled to is an examination of the record, research of the law, and the marshaling of arguments on behalf of the defendant. *Douglas v. California*, 372 U.S. 353, 358 (1963).

Additionally, under the AEDPA, the federal court's review of the state court's decision is subject to another level of deference. *Bell*, 535 U.S. at 689-699. In order to merit habeas relief, therefore, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1); *West v. Schriro*, 2007 U.S. Dist. LEXIS 90802 (D.Ariz. Nov. 29, 2007).

The Ninth Circuit has held that a convicted defendant has no Sixth Amendment rights on appeal because appellate review is not required of states. "If, however, the State elects to furnish an avenue for appeal, its procedures must comport with the Due Process and Equal Protections Clauses of the Fourteenth Amendment." *Tamalini v. Stewart*, 249 F.3d 895 (9th Cir. 2001).

### *B. Trial Counsel*

Petitioner argues trial counsel was ineffective in four ways: (1) failing to discover and investigate Petitioner's PTSD, (2) failing to present Petitioner's PTSD to the jury through expert testimony, (3) failing to present imperfect self-defense based on PTSD, and (4) failing to investigate and present self-defense as it relates to PTSD. (Doc. 1 at 9.) Respondent argues all of Petitioner's claims to this extent are conclusory and should be rejected as such. (Doc. 18-1 at 13.) Given these allegations' conclusory nature, Respondent contends the Court of Appeal was correct and could not have been unreasonable in rejecting Petitioner's claim. (*Id.*)

Petitioner's arguments here can be simplified into two basic categories: Petitioner's PTSD and self-defense. In order to best assess Petitioner's arguments, the Court will rearrange his arguments under these headings. The Court will first determine whether trial counsel was ineffective in failing to discover, investigate, and present Petitioner's PTSD. Second, the Court will determine whether trial counsel was ineffective in his presentation of self-defense.

### 1. *Petitioner's PTSD Diagnosis*

Petitioner first argues his trial counsel was ineffective in failing to discover his PTSD diagnosis, investigate the effect of this diagnosis on Petitioner's case, and present the diagnosis to the jury through expert testimony. Petitioner contends had trial counsel discovered his PTSD before the trial an alternate defense could have been presented wherein Petitioner, affected by his PTSD, was prompted to commit the assaults as a result of feeling threatened and falling back on his military training to deal with the perceived threats. However, Petitioner's argument in this regard falls short for the following reasons.

Petitioner argues that because he has "no evidence" of trial counsel's "due diligence" performed before the trial, trial counsel must not have performed any investigation which would have allegedly led to the discovery of Petitioner's PTSD. (Doc. 1 at 30.) However, a lack of evidence is not the same as affirmative evidence. To show ineffective assistance of counsel, Petitioner must overcome a "strong presumption" that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *See Strickland*, 466 U.S. at 690. Here, it is unclear whether Petitioner lacks any evidence of trial counsel's investigation because trial counsel truly performed no investigation. Regardless, under the presumption, Petitioner must affirmatively show trial counsel did not conduct such an investigation. Without such evidence Petitioner's claim alleging a failure to investigate does not have merit. *Carillo-Valenzuela v. United States*, 2009 U.S. Dist. LEXIS 40531, *7-8 (E.D. Cal. May 13, 2009).

Next, Petitioner argues introducing the perceived threat would have played a key role in an alternate defense. What Petitioner fails to note is trial counsel in fact explored and presented this during trial. In examining the Rochas, Ramirez, and Petitioner, trial counsel elicited testimony of the circumstances surrounding the incident – primarily that there was little light illuminating the area of the incident. (See Lodgment 2 at 158, 168, 246.) Additionally, in his closing, trial counsel explicitly laid out the perceived threatening circumstances, including the men's tempers running high, the dark, the Rochas and Ramirez retreating to a vehicle when Manuel arrived, the three men approaching Petitioner together from the darkness, and Manuel raising his hands at Petitioner. (*Id*. at 313.)

According to Petitioner, this presentation by trial counsel was ineffective. The Court disagrees. Trial counsel introduced testimony describing the evening's events and the surrounding conditions. The Court notes trial counsel did not mention the perceived threat until his closing and Petitioner's military training was only addressed on cross-examination. However, trial counsel bundled all of the evidence related to this theory and introduced throughout the trial, and presented the perceived threat and Petitioner's referring to his military training during closing arguments. The jury therefore was directly presented with, and could infer any missing components of, the argument Petitioner believes would have prevailed. The jury knew of Petitioner's military training and could assess whether it found the perception of a threat reasonable. The jury clearly found the theory not credible. Regardless of the arguably disjointed presentation, trial counsel did present evidence of Petitioner's perception of and response to a threat adequately at trial. Therefore, Petitioner's claim to this extent lacks merit.

Furthermore, while trial counsel did not address Petitioner's PTSD during the trial, he did introduce Petitioner's medical records regarding the PTSD in a mitigation statement submitted for sentencing purposes. (Lodgment 1 at 84-110.) This was appropriate because California law does not recognize PTSD to negate any intent required to commit a crime, but rather is only relevant to sentencing. *See United States v.*
13

3:14-cv-00567-H-PCL

*Rice*, 458 Fed.Appx. 652, 653 (9th Cir. 2011) (holding PTSD is relevant to sentencing even when it is not relevant to guilt). Given this, trial counsel was not ineffective for not presenting Petitioner's PTSD diagnosis to the jury. Because Petitioner's PTSD was irrelevant to Petitioner's actual trial, trial counsel could not have been ineffective by declining to introduce expert testimony describing Petitioner's PTSD diagnosis. Trial counsel was correct in delaying the introduction of the PTSD diagnosis until the sentencing phase.

Because trial counsel adequately presented the main components of Petitioner's alternate defense and refrained from prematurely introducing evidence which would have been irrelevant at the time, trial counsel was not ineffective. Therefore, Petitioner's claim to this extent must fail.

### 2. *Self Defense*

Petitioner next argues his trial counsel was ineffective for neglecting to argue self-defense, or in the alternative, imperfect self-defense. (Doc. 1 at 9.) Trial counsel's theory presented to the jury was that because the gun Petitioner wielded was not actually capable of firing a bullet without some additional manipulation, there could not have been an assault. (Lodgment 2 at 250.) Petitioner was charged with two counts of violating California Penal Code section 245, subsection (b): assault upon another with a semi-automatic firearm. (Lodgment 1 at 1.) To convict a person of this crime, "the defendant must have done an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to another person." (*Id*. at 309.) Trial counsel's strategy was to show that without further action by Petitioner, simply pointing the gun would not "directly and probably result in the application of force" because some additional manipulation was necessary. (*Id*. at 309-310.) Trial counsel would attack the prima facie case by showing the act was too attenuated with an actual "application of force to another." (*Id*.)

While trial counsel did not explicitly argue self-defense, or imperfect self-defense, as an affirmative defense during trial, in his closing argument, trial counsel did address

the aspects of self-defense and how they applied to the case at hand. (*See* Lodgment 2 at 312-313.) To prove a prima facie case for assault against Petitioner, the prosecution had to show, among other things, "the application of force was not in self-defense." (*Id*. at 312.) Given this, trial counsel addressed whether Petitioner's brandishing the gun was in fact in self-defense or not. Trial counsel explored this alternate theory in his closing, pointing to the tempers of the men involved and the darkness of the evening as justifications for Petitioner's belief the situation was dangerous. (*Id*. at 312-313.)

Additionally, the jury was instructed comprehensively on the law of self-defense. (*Id*. at 291-93.) Based on the receipt of this instruction, the jury was informed and aware of this defense when rendering its final verdict. *See Perrault v. Virga*, 2014 U.S. Dist. LEXIS 47171, *35 (N.D. Cal. April 4, 2014). The jury, therefore, could have found Petitioner had been merely defending himself when he committed the assaults. Regardless, then, of whether or not trial counsel's presentation of self-defense was actually deficient, there was no prejudice against Petitioner as a result of trial counsel's actions, because the jury had the appropriate information when entering deliberations.

Lastly, trial counsel's strategy in this case, as discussed above, was that because the gun Petitioner had used in the crime was not readily able to fire a bullet without further manipulation, Petitioner could not have assaulted the Rocha men. In furthering this argument, trial counsel was negating the prima facie case rather than presenting an affirmative defense. Presenting self-defense, on the other hand, would be presenting an affirmative defense, where Petitioner would be admitting he had committed the assaults, but was justified in doing so. Clearly, claiming self-defense conflicts with trial counsel's chosen strategy of attacking the prima facie case.

An attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. In this case, Petitioner chose to plead not guilty, which he had "the ultimate authority" to do. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). However, because Petitioner chose to plead not guilty, trial counsel would have been arguing directly against that plea

15

by presenting self-defense or imperfect self-defense as an affirmative defense. Thus, by neglecting to explicitly argue self-defense, or imperfect self-defense, trial counsel represented Petitioner zealously and adhered to Petitioner's plea.

Based on this totality of circumstances surrounding the theory of self-defense in Petitioner's case, the Court finds Petitioner has not shown his trial counsel was ineffective. Regardless of whether trial counsel was deficient or not in his presentation the affirmative defense of self-defense, trial counsel was not constitutionally ineffective. Petitioner has not shown that trial counsel's presentation of this defense was "so egregious as to deprive [Petitioner] of a fair trial, . . . ." *Strickland*, 466 U.S. at 688. Instead, the record is clear that trial counsel presented the perceived threat the evening of the incident, Petitioner's military training which "took over" in responding to the perceived threat, that the force used did not exceed that which was necessary to end the perceived threat, and Petitioner's cooperation with law enforcement following the incident. After presenting this evidence, the jury was in fact instructed on the law of self-defense as an affirmative defense, in addition to self-defense as an element of the prima facie case for assault. Thus, while trial counsel may not have made self-defense an overarching theme of the case, trial counsel did present self-defense reasonably at trial.

Petitioner therefore has not proven he received ineffective assistance of counsel from trial counsel, either through the alleged failure to investigate and present evidence of Petitioner's PTSD or through trial counsel's presentation of self-defense. Accordingly, Petitioner's claim to this extent fails and must be **DENIED**.

*C. Appellate Counsel*

Petitioner next argues he received ineffective assistance of counsel from his appellate counsel when appellate counsel raised a sentencing issue on appeal.[3] There,

---

[3] Respondent addressed an argument that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel; however, the Court does not see Petitioner's claim to this extent. Nevertheless, even if Petitioner had made this claim, given the Court's determination that trial counsel

16

Petitioner's appellate counsel argued the trial court had erred by "using the same factor to impose the high term on the assault count and the maximum term on the enhancement." (Lodgment 3 at 10.) The Court of Appeal rejected this argument because the issue was considered forfeited given trial counsel did not object to the dual use of Petitioner's prior criminal history at the time of sentencing. (Lodgment 6 at 6.) Petitioner argues now that his appellate counsel was ineffective for raising a forfeited claim on direct appeal. (Doc.1 at 5-6.) Respondent contends the Court of Appeal, in the last reasoned decision rendered on this issue, was correct in finding Petitioner failed to satisfy either *Strickland* prong in presenting this claim. (Doc. 18-1 at 13.)

At sentencing, the trial court recognized Petitioner had an extensive criminal history, which included an attempted murder conviction where Petitioner had engaged in a car chase and fired a weapon at an occupied vehicle when he was a minor. (Lodgment 2 at 4-5.) This criminal history led the trial court to sentence Petitioner to the upper term on the first assault charge and the upper term on the enhancement thereon. (*Id*. at 352.) The trial court began sentencing Petitioner on July 7, 2011; however, in order to give probation services adequate time to devise the requested comprehensive probation plan, the trial court did not impose the final sentence until August 12, 2011. (*Id*. at 343, 365.) Petitioner's final sentence was 22 years and four months, but the trial court stayed the execution of the sentence and placed Petitioner on formal probation for 10 years. (*Id*. at 367-68.) Less than two months later, on October 11, 2011, Petitioner's probation was revoked because Petitioner admitted to using methamphetamine. (*Id*. at 375.) Petitioner was thereafter taken into custody to serve the remainder of his sentence. (*Id*.)

While a *failure* to raise untenable issues on appeal does not fall below the *Strickland* standard, here Petitioner argues his appellate counsel was ineffective *for* raising an unmeritorious issue. *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir.

---

was not ineffective, the argument would be meritless. The Court will therefore not further address any claim to this extent.

17

1991) ("Petitioner was not prejudiced by appellate counsel's decision not to raise issues that had no merit."); *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980) ("There is no requirement that an attorney appeal issues that are clearly untenable.") Specifically, Petitioner points out his appellate counsel was ineffective because appellate counsel "raise[d] a forfeited claim on behalf of the Petitioner, and the[n] cite[d] a case that tells one that the very claim raised required Trial Counsel to object during sentencing." (Doc. 1 at 6.)

Illustrating Petitioner's allegation, in Appellant's Opening Brief, (Lodgment 3), appellate counsel cited to *People v. Osband*, 13 Cal.4th 622, 728-29 (Cal. 1996), to support the claim that the trial court erred in finding one sole aggravating factor warranted the upper term on both the assault and the enhancement. (Lodgment 6 at 12.) Only three paragraphs preceding the passage appellate counsel cited, however, the *Osband* court states that while "Defendant raised no claims of error at trial, . . . , because the proceedings predate *People v. Scott*, (1994) 9 Cal. 4th 331, [(requiring objections at sentencing to preserve issues on appeal)]" the court considered the sentencing issues on appeal. *People v. Osband*, 13 Cal. 4th at 728. Thus, Petitioner argues based on this passage being so close in proximity to that which appellate counsel cited, appellate counsel should have been aware of the preservation requirements. This awareness combined with appellate counsel's failure to address trial counsel's lack of objection, according to Petitioner, means appellate counsel filed a "frivolous" claim on Petitioner's behalf.

While Petitioner argues this claim brought by his appellate counsel was ultimately frivolous, (*See* Doc. 1 at 6), the Court of Appeal did not treat the issue as frivolous. Instead, the issue was addressed in a reasoned opinion, including an analysis on the merits, despite the issue's procedural bar. (*See* Lodgment 6 at 10-13.) Because the Court of Appeal clearly did not find the argument raised by appellate counsel to be frivolous, Petitioner's claim to this extent must fail. *See Foster v. Garcia*, 2006 U.S. Dist. LEXIS 84721, *69-70 (E.D. Cal. November 20, 2006) (where the court found appellate counsel

was not ineffective for raising what petitioner argued were frivolous claims because the claims were not treated as frivolous by the state court).

Because Petitioner has not shown his appellate counsel acted deficiently, nor that Petitioner was unfairly prejudiced by such deficient actions, Petitioner has failed to prove his claim that he received constitutionally ineffective assistance of counsel from appellate counsel. Accordingly, Petitioner's claim to this extent is **DENIED**.

## V. CONCLUSION

This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. section 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

Any party may file written objections with the Court and serve a copy on all parties on or before **June 6, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **June 13, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Ylst*, 951 F.2d at 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: May 21, 2018

Hon. Peter C. Lewis
United States Magistrate Judge