UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANTONIO AUDELO,<br><br>　　　　　　　　　　　　Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Secretary of the California Department of Corrections and Rehabilitation,[1]<br><br>　　　　　　　　　　　　Respondent. | Case No.: 3:14-cv-00567-H-PCL<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>**(2) ADOPTING REPORT AND RECOMMENDATION; and**<br><br>**(3) DENYING CERTIFICATE OF APPEALABILITY**<br><br>[Doc. Nos. 1, 24, 29.] |

On March 12, 2014, Eric Antonio Audelo ("Petitioner"), a pro se prisoner at the

---

[1] Petitioner is currently incarcerated at the California City Correctional Facility in California City, California. California Department of Corrections and Rehabilitation: Inmate Locator, https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=AK1435 (last visited Jul. 17, 2018). George Jamie is the active warden of this facility. California Department of Corrections and Rehabilitation, https://www.cdcr.ca.gov/Facilities_Locator/CAC.html (last visited Jul. 17, 2018). However, the court sua sponte substitutes Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation, as the Respondent in this action.

1

California City Correctional Facility in California City, California, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner challenges his convictions for: (1) two counts of assault with a semi-automatic firearm, Cal. Penal Code § 245(b); and (2) one count of being under the influence of a controlled substance, Cal. Health & Safety Code § 11550(a). (Id. at PageID 2.) On May 21, 2018, the magistrate judge issued a Report and Recommendation to deny the petition. (Doc. No. 24.) Petitioner filed timely objections to the Report and Recommendation on July 12, 2018, (Doc. No. 28), and Respondent elected not to reply. For the reasons that follow, the Court adopts the Report and Recommendation as supplemented by this Order, and denies the petition.

## BACKGROUND

**I.   Factual History**

The California Court of Appeal described the facts relevant to Petitioner's case as follows:

> On November 18, 2009, [Petitioner], his mother and grandmother were moving out of their rented home because their lease expired. The owner of the home, Jose Rocha, [FN. We refer to Jose Rocha and his son, Manuel Rocha, by their first names individually, and as "the Rochas" collectively.] and his son-in-law, Hector Ramirez, visited the home to see how long it would be until they were finished moving. Jose also asked [Petitioner] when he would be able to move an inoperable car parked on the property. The car belonged to [Petitioner]'s older brother who died in 1991 as a teenager in a shooting in which [Petitioner] was also shot. Jose explained he received notices from the city to move the car or he would incur fines. Jose told [Petitioner] that he (Jose) would move the car and [Petitioner] became angry.
>
> Ramirez approached [Petitioner] to calm the confrontation and [Petitioner] threatened to fight him. Jose called Manuel to come to the home; Jose and Ramirez then sat in a car parked in the street. [Petitioner] got his semi-automatic handgun and placed it in its box in the front seat of his car. [Petitioner], his grandmother and his mother continued moving items out of the house when Manuel arrived.
>
> After Manuel arrived, the Rochas and Ramirez approached [Petitioner], who was standing by his car. As they approached, [Petitioner] grabbed the handgun from the box in the front seat of his car and hid it behind his back. [Petitioner]

> told the Rochas he would move the car but added it did not matter because Jose was going to lose the house, presumably to foreclosure. Manuel told [Petitioner] the home was none of his business and told him to take his things and "go out."
>
> [Petitioner] pulled the gun out from behind his back and pointed it at Manuel stating, "Come on. What are you going to do about it? Let's go." When Jose assured [Petitioner] they were not trying to insult him, [Petitioner] pointed the gun toward Jose and said, "You too, asshole!" Although the gun was loaded when he pointed it at the Rochas, [Petitioner] did not load a bullet into the chamber or put his finger on the trigger. [Petitioner]'s mother tried to calm him. Manuel retreated to the car and called the police, and [Petitioner], Jose and Ramirez continued to argue.
>
> [Petitioner] was arrested without incident and taken into custody. While in custody, he admitted he was under the influence of methamphetamine and later explained he struggled with addiction since his honorable discharge from the Army in 2008. He was charged with two counts of assault with a deadly weapon for pointing the semi-automatic handgun at each of the Rochas, with enhancements for personal use of a firearm for each assault charge, and one count of being under the influence of a controlled substance.

(Doc. No. 19-11, Lodgment No. 6 at 2-4.) These facts are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Petitioner has not argued that the Court of Appeal committed any factual errors.

## II. Procedural History

The California Court of Appeal also summarized the trial court proceedings as follows:

> A jury convicted [Petitioner] of all counts and found true that he personally used a firearm in the commission of the two assault counts.
>
> At sentencing, the court imposed the upper terms for one assault and for the attached enhancement, simply stating [Petitioner]'s criminal history supported the upper terms. When 14 years old, [Petitioner] was convicted of possessing a switchblade, resisting arrest, and twice taking a vehicle without the owner's consent. At 17, he was convicted of attempted premeditated murder, malicious discharge of a firearm at an occupied vehicle, and being personally and principally armed with a firearm. At 23, he was convicted of driving under the influence and causing an injury. At 25 he was again

convicted of driving under the influence, and convicted twice of being under the influence of a controlled substance. Finally, at the age of 34, he was convicted of possessing drug paraphernalia one month before he committed the assault on the Rochas while under the influence of methamphetamine.

The court sentenced [Petitioner] to prison for the upper term of nine years [FN. The trial court has the discretion to sentence a defendant convicted of assault with a semi-automatic firearm to state prison for three, six, or nine years.] for one assault count, the upper term of 10 years [FN. The trial court has the discretion to impose a consecutive sentence for the personal use of a firearm enhancement for three, four, or 10 years in state prison.] for the attached personal use of a firearm enhancement, two years for the second assault count, and one year for being under the influence of methamphetamine, which the court deemed satisfied by credit for time served. [FN [Petitioner] challenges only the court's imposition of the upper term for the first count of assault with a deadly weapon and the upper term for personal use of a firearm enhancement on count one.] In total, the court sentenced [Petitioner] to 22 years four months in prison. The court previously granted [Petitioner]'s motion to dismiss his prior strike conviction allegation for the attempted premeditated murder conviction, and [Petitioner] is eligible for formal probation. It suspended execution of the sentence and ordered 10 years of formal probation, cautioning [Petitioner] not to violate probation because the prison sentence was severe.

[Petitioner] violated probation two months after sentencing when he admitted he used methamphetamine. At the probation revocation hearing, his probation officer reported [Petitioner] also had post-traumatic stress disorder as a result of his military service, refused to utilize available mental health services, and was a danger to himself and others. The court revoked probation and imposed the suspended 22-year, four-month sentence.

(Doc. No. 19-11, Lodgment No. 6 at 4-5.)

Petitioner directly appealed his conviction to the California Court of Appeal for the Fourth District, arguing the following: (1) the trial court erred by using his criminal record to impose the upper term on one assault count and on the enhancement for personal use of a firearm; and (2) his sentence was manifestly unjust. (Doc. No. 19-11, Lodgment No. 6 at 2.) The Court of Appeal concluded that Petitioner was procedurally barred from bringing his first claim on appeal because Petitioner did not raise it during sentencing. (Id. at 2.) The Court of Appeal nevertheless elected to deny the first claim on the merits, holding that

the trial court was within its discretion to use Petitioner's criminal history to impose the upper terms on both the first assault count and the enhancement. (Id.) The court also held Petitioner's sentence "was not manifestly unjust considering the gravity of the crimes and [Petitioner]'s lengthy criminal record." (Id. at 10.) Petitioner did not appeal this ruling to the California Supreme Court.

Instead, on June 3, 2013, Petitioner filed a petition for a writ of habeas corpus in the Superior Court of California. (Doc. No. 19-12, Lodgment No. 7.) Petitioner argued his trial counsel was ineffective for failing to adequately research his Post-Traumatic Stress Disorder ("PTSD") and the law of self-defense, and for failing to adequately present his PTSD and self-defense theory to the jury. (Id. at PageID 1086-88.) Petitioner also argued his appellate attorney was ineffective for raising a forfeited sentencing issue on appeal and failing to raise a claim for ineffective assistance of trial counsel. (Id. at PageID 1083-85.) The Superior Court denied the petition citing that Petitioner failed to present facts to demonstrate the ineffective assistance of his trial or appellate counsel. (Doc. No. 19-13, Lodgment No. 9 at 3.)

Petitioner next filed a petition for a writ of habeas corpus in the California Court of Appeal raising the same claims. (Doc. No. 9-14, Lodgment No. 9.) On August 9, 2013, the Court of Appeal also denied his claims.

On December 9, 2013, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. (Doc. No. 9-16, Lodgment No. 11 at PageID 1273.) On February 19, 2014, the California Supreme Court summarily denied the petition. (Doc. No. 9-17, Lodgment No. 12.)

On March 12, 2014, Petitioner filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On May 21, 2018, the magistrate judge issued a Report and Recommendation to deny the petition. (Doc. No. 24.) On July 12, 2018, Petitioner filed timely objections to the Report and Recommendation, (Doc. No. 28), and

a motion for a certificate of appealability, (Doc. No. 29). [2]

## LEGAL STANDARDS

### I. Legal Standards for § 2254 Claims

Petitioner's claims are governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). See 28 U.S.C. § 2254. Under AEDPA, a federal district court may grant a writ of habeas corpus to a state prisoner only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); accord Swarthout v. Cooke, 562 U.S. 216, 219 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)) (internal quotation marks omitted)).

Accordingly, "[a]n application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Review under § 2254(d)(1) is "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and "limited to the record that was before the state court that adjudicated the claim on the merits," Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

"[Section] 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.'" Bell v. Cone, 535 U.S. 685, 694 (2002); see Williams v. Taylor,

---

[2] On July 12, 2018, in response to the magistrate judge's Report and Recommendation that this Court deny the petition, Petitioner filed a notice of appeal to the Ninth Circuit. (Doc. No. 30.) However, the magistrate judge's Report and Recommendation is not an appealable final order. See Hilliard v. Kincheloe, 796 F.2d 203, 309 (9th Cir. 1986) ("[R]eports and recommendations filed by magistrates with the district court and served on the parties . . . are not appealable orders and . . . any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment."). Therefore, Petitioner's notice of appeal does not deprive this Court of jurisdiction. See United States v. Garner, 663 F.2d 834, 838 (9th Cir. 1981) ("When there is a deficiency in the notice of appeal for whatever reason, however, the district court is not deprived of jurisdiction."); Phillips v. Janda, No. 13cv0567 BTM (JLB), 2015 WL 669023, at *2 (S.D. Cal. Feb. 13, 2015) ("[A]n appeal from an order that is neither final nor appealable does not divest the district court of jurisdiction over the action or the order challenged in the appeal.").

529 U.S. 362, 404-05 (2000) (distinguishing the "contrary to" and the "unreasonable application" standards). In short, a state-court ruling is "contrary to" clearly established Federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 523 U.S. at 412-13. Moreover, a state-court ruling constitutes an "unreasonable application" of clearly established Federal law when it applies the correct principle articulated by Supreme Court precedent to the facts of a petitioner's case in an unreasonable manner. Id. at 413.

In order for a federal court to grant a writ of habeas corpus pursuant to the "unreasonable application" prong, "the state court's decision must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003). Instead, the state court's application of the relevant precedent must have been objectively unreasonable. Id.; Lockyer, 538 U.S. 63, 76 (2003); see also Harrington, 562 U.S. at 100 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

"Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Lockyer, 538 U.S. at 71 (quoting Williams, 529 U.S. at 412); see also Parker v. Matthews, 567 U.S. 37, 48 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

In determining whether to defer to a state court's denial of a habeas petitioner's claims, the Court reviews the reasoning of the last state court to have denied the claims on the merits. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). In this case, the California Supreme Court denied Petitioner's claims without explanation. (Doc. No. 9-17, Lodgment No. 12.) The Court must thus "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "then presume that the unexplained decision adopted the same reasoning." Wilson, 138 S. Ct. at 1192. The Court therefore focuses its attention on the California Court of Appeal's opinion denying

Petitioner's habeas claims. (Doc. No. 19-15, Lodgment 10.)

## II. Legal Standards for § 2254 Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel in critical stages of criminal proceedings, including on appeal. Lafler v. Cooper, 566 U.S. 156, 165 (2012). However, "[t]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation." Strickland v. Washington, 446 U.S. 668, 689 (1984). Instead, "[t]he purpose is simply to ensure that criminal defendants receive a fair trial." Id.

In Strickland, the Supreme Court held that Sixth Amendment ineffective assistance of counsel claims have two components. Id. at 687; see also Williams, 529 U.S. at 391 ("[The Strickland test] qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'") "First, [a petitioner] must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. "Second, [a petitioner] must show that the deficient performance prejudiced the defense." Id.

The first component of the Strickland test requires a showing that counsel's representation "fell below an objective standard of reasonableness." Id. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms," and is "highly deferential" to counsel. Id. at 688-89; see also Padilla v. Kentucky, 559 U.S. 356, 371 (2010) ("Surmounting Strickland's high bar is never an easy task."). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in light of exercise and reasonable judgment." Strickland, 466 U.S. at 690. This Court must apply a "heavy measure of deference" to the reasonableness of counsel's decisions. Id. Counsel's decisions must be "assessed in light of the information known at the time . . . not in hindsight." Id. at 680.

The second component of the Strickland test requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A petitioner must show, in essence, that the errors of counsel "undermine confidence in the outcome" of the petitioner's

criminal proceedings. Id.

Under AEDPA, a federal court's review of an ineffective assistance of counsel claim is "doubly deferential." Pinholster, 563 U.S. at 190 (citation omitted); see also Harrington, 5623 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both 'highly deferential.'"). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable." Harrington, 562 U.S. at 105. Rather, the proper "question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

# DISCUSSION

**I. Merits Analysis**

**A. Ineffective Assistance of Trial Counsel**

Petitioner alleges his trial counsel rendered ineffective assistance by: (1) failing to conduct an adequate pretrial investigation into Petitioner's PTSD; (2) failing to present evidence, including expert witness testimony, to demonstrate Petitioner's PTSD diagnosis to the jury; (3) failing to assert self-defense, or imperfect self-defense, at trial; and (4) failing to adequately research the laws governing self-defense as they related to Petitioner's PTSD.[3] (Doc. No. 1 at PageID 9.)

1. Failing to Investigate Petitioner's PTSD

Petitioner's claim that his trial counsel failed to investigate his PTSD diagnosis is

---

[3] Petitioner claims his trial counsel was ineffective for two additional reasons: (1) his trial counsel struck a deal upon sentencing in which the Court could revoke his probation for using methamphetamines, despite his counsel's knowledge of his methamphetamine addiction, (Doc. No. 23 at 7); and (2) his trial counsel failed to object to confusing jury instructions, (Doc. No. 23 at 9). These claims were raised by Petitioner for the first time in his traverse. (Doc. No. 23 at 7, 9.) This Court denies these claims on the merits because Petitioner has not provided any factual basis to show it was objectively unreasonable for his trial counsel to strike a deal affording him the opportunity to serve his sentence entirely on probation subject to certain stipulations, or that the jury instructions deprived him of a fair trial. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Because this Court denies these claims on the merits, it need not reach the issue procedural default. See Flournoy v. Small, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) (holding that a court may reach the merits of a habeas claim despite an asserted procedural bar when the claim "clearly fails on the merits"); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (same).

unsubstantiated. Petitioner has not put forth any affirmative "evidence [showing his] trial counsel in fact never engaged in such investigations." (Doc. No. 19-15, Lodgment No. 10 at 1.) Therefore, Petitioner fails to overcome the "strong presum[ption]" that his counsel "rendered adequate assistance." See Strickland, 466 U.S. at 690. In fact, the evidence in the record conversely suggests that Petitioner's trial counsel did investigate his PTSD diagnosis. (Doc. No. 19-1, Lodgment No. 1 at PageID 397-98.) Upon sentencing, Petitioner's trial counsel introduced medical records documenting his PTSD at length in a mitigation statement. (Id.)

### 2. Failing to Present Petitioner's PTSD to the Jury

Petitioner has not satisfied his burden to show that it was objectively unreasonable for his trial counsel to elect to not present evidence of his PTSD diagnosis at trial. Petitioner's trial counsel could have made the tactical decision that admitting medical evidence and expert testimony demonstrating his PTSD to the jury would lead to the introduction of Petitioner's unfavorable history of substance abuse and violent behavior. Additionally, his trial counsel could have decided that the introduction of this evidence would have confused the jury, prejudicing his primary defense that the prosecution did not prove every element beyond a reasonable doubt. See Yarbarough v. Gentry, 540 U.S. 1, 8 (2003) (recognizing the advantages of "focus[ing] on a small number of key [issues]" at trial). Therefore, the California Court of Appeal's denial of this claim was not an unreasonable application of Strickland. See Harrington, 562 U.S. at 105 (conveying the proper standard of review for ineffective assistance claims under AEDPA is to deny the claim when there is any reasonable argument that counsel was not deficient).

### 3. Failing to Assert Self-Defense and Imperfect Self-Defense

Petitioner's trial counsel adequately addressed self-defense. At trial the prosecution carried the burden to prove Petitioner did not act in self-defense. (Doc. No. 19-1, Lodgment No. 1 at PageID 350.) To be convicted of assault with a semiautomatic firearm,

Petitioner's actions must have not been "in self-defense or defense of [others]."[4]  Id. Accordingly, instead of affirmatively raising a self-defense claim, Petitioner's trial counsel attempted to negate this element of the offense at length in his closing argument. (Doc. No. 19-5, Lodgment No. 2 at PageID 911-14.)  In doing so, trial counsel argued that Petitioner reasonably brandished his firearm to repel the perceived threat of an individual jumping towards him with raised hands in the dark. (Id. at PageID 913-14.)  As such, the record does not suggest the California Court of Appeal unreasonably applied Strickland because there is evidence Petitioner's trial counsel presented a self-defense claim.  See Harrington, 562 U.S. at 105.

Moreover, Petitioner has not presented any evidence to demonstrate it was objectively unreasonable for his trial counsel to decide to not raise an imperfect self-defense claim.  On the contrary, presenting imperfect self-defense may have conflicted with his trial counsel's perfect self-defense argument that Petitioner acted reasonably and was in control of his surroundings when he attempted to diffuse the situation by pulling out his firearm.  See Yarbarough, 540 U.S. at 8 (recognizing the advantages of limiting the issues presented at trial).  Therefore, a decision to not raise an imperfect self-defense claim or otherwise negate the intent element of the crime was not objectively unreasonable.  Id.

### 4. Failing to Adequately Research the Law of Self-Defense

Finally, Petitioner's claim that his trial counsel failed to adequately research the law of self-defense as it pertains to PTSD is also unsubstantiated.  Petitioner has not put forward any affirmative evidence showing his trial counsel did not perform such an investigation, while conversely there is evidence that his trial counsel investigated his PTSD at length. (See Doc. No. 19-1, Lodgment No. 1 at PageID 397-98.)  Therefore, Petitioner has not carried his burden of proving his trial counsel was ineffective in this regard.  See Strickland, 466 U.S. at 690.

---

[4]     Additionally, the jury was instructed at length on the law of self-defense before deliberation. (Id. at PageID 355-56.)

In sum, the state court's denial of Petitioner's ineffective assistance of trial counsel claims was not "contrary to, or an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Therefore, this Court denies these claims.

### B. Ineffective Assistance of Appellate Counsel

Petitioner next claims his appellate counsel was unconstitutionally ineffective for (1) raising a forfeited claim on appeal and (2) failing to raise a claim that his trial counsel was ineffective for not preserving the now-forfeited claim at his sentencing. (Doc. No. 1 at PageID 5-7.) Respondent contends that Petitioner's appellate counsel did not err by raising a forfeited claim, and that any error would not have been prejudicial. (Doc. No. 18 at 8.)

At sentencing, the trial court relied on Petitioner's extensive criminal history to impose the upper sentence on one of his assault counts and on the enhancement for the personal use of a firearm. (Doc. No. 19-11, Lodgment No. 6 at 4.) On direct appeal, Petitioner's appellate counsel argued the trial court abused its discretion in using the same fact to impose the upper term on both the assault and the enhancement. (Id. at 2.) The California Court of Appeal held the claim was forfeited, but elected to also deny it on the merits. (Id. at 6.) In denying the claim on the merits, the Court of Appeal distinguished the circumstances of this case from the "variety of situations" where the dual use of a fact at sentencing is prohibited. (Id. at 7.)

#### 1. Raising a Forfeited Claim on Appeal

Here, the fact that the Court of Appeal denied Petitioner's sentencing claim on the merits in a reasoned opinion supports the notion that the claim was not frivolous. However, even assuming for arguendo that Petitioner's appellate counsel did err for raising a forfeited claim on appeal, the error was not prejudicial to Petitioner because it would not have changed the outcome of the proceeding. See Strickland, 466 U.S. at 694 (acknowledging that Sixth Amendment ineffective assistance claims require "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### 2. Failing to Raise a Claim For Ineffective Assistance of Trail Counsel

Additionally, Petitioner's trial counsel was not ineffective for failing to object to the trial court's use of Petitioner's criminal history at sentencing, because the claim was eventually denied on the merits by the California Court of Appeal. See Strickland, 466 U.S. at 692 ("[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the [Sixth Amendment]."). This Court is bound by the Court of Appeal's determination that the trial court did not violate California law. McGuire, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (citation omitted)). Therefore, Petitioner's appellate counsel did not err by neglecting to raise this meritless claim. See Fetherstone v. Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991) (holding "appellate counsel's decision not to raise an issue that had no merit" was not prejudicial to petitioner).

In sum, the state court's denial of Petitioner's ineffective assistance of appellate counsel claims was not "contrary to, or an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Therefore, this Court denies these claims.

## II. Certificate of Appealability

A certificate of appealability may be issued only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on the merits, a petitioner satisfies the above requirement by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, after reviewing the petition, the Court concludes that jurists of reason would not disagree with the Court's analysis of Petitioner's claims on the merits, and therefore declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation as supplemented by the reasoning in this Order, overrules Petitioner's objections, and denies

the petition.  Additionally, the Court declines to issue a certificate of appealability.  The Clerk of the Court is directed to enter judgment in favor of Respondent.

**IT IS SO ORDERED.**

DATED:  July 27, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT